# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Imaged Apple iPhone (inventoried at #412 2024 IE 000245) and Imaged Apple iPad, Model A1490, Serial #DMPR58F1FLMJ | Case No. '24 MJ4703 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein,

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1029(a)(2), (b)(2) | Access Device Fraud Conspiracy |
| 18 USC 1029(a)(2), (b)(1) | Use and Attempted Use of Unauthorized Access Devices |

The application is based on these facts:
See Attached Affidavit of Special Deputy US Marshal Fausto W. Romero, incorporated herein.

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fausto W. Romero*
Applicant's signature

Special Deputy US Marshal Fausto W. Romero
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone** *(specify reliable electronic means)*.

Date: 12/17/2024

*Judge's signature*

City and state: San Diego, California      Hon. Steve B. Chu, US Magistrate Judge
*Printed name and title*

## STATEMENT OF FACTS

I, Fausto Romero, being duly sworn, state as follows:

1. This affidavit is in support of an application by the United States of America for a warrant to search the copies of the following electronic devices that were imaged pursuant to search warrant 24MJ4326, as described in Attachment A, which the United States Secret Service ("USSS") and members of the SoCal Cyber Fraud Task Force (SoCal CFTF) obtained on November 19, 2024:

    a. Apple iPhone (inventoried as #412 2024 IE 000245) ("**Target Device-1**");

    b. Apple iPad, Model A1490, Serial #DMPR58F1FLMJ ("**Target Device-2**");

(collectively, the "**Target Devices**") for items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C. §§ 1029(a)(2) (unauthorized access devices) and 1029(b)(2) (conspiracy), as described in Attachment B.

2. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure, and seeks to expand the authorized search and seizure period for both **Target Devices**. The warrant issued under Matter No. 24MJ4326 authorized the seizure of evidence for **Target Device-1** from April 1, 2023 through and including September 4, 2024, and, for **Target Device-2,** from April 1, 2023 through and including January 31, 2024. This Affidavit and Application seek authorization to extend the authorized seizure period back to April 1, 2022 for both **Target Devices** and also extend the end date for **Target Device-2** up to and including August 24, 2024.

## EXPERIENCE AND TRAINING

3. I am a peace officer employed by the San Diego Police Department, (SDPD) for over 29 years. I have been a police detective for well over 15 years and I am currently assigned to the Southern California Cyber Fraud Task Force, (SoCal CFTF) sponsored by the USSS. As part of the SoCal CFTF, I hold a Special Deputation

of Special Federal Deputy Marshal which grants me the authority to perform the duties of a Deputy US Marshal.

4. My duties as a police detective have included the investigation of well over 500 criminal cases including cyber, financial, and white-collar crimes. I have personally conducted or assisted in the investigation of violations of U.S. law, including access device fraud, computer fraud, identity theft, manufacturing credit cards, and money laundering economic crimes, frauds, forgeries, and identity theft cases. I possess a Basic and Intermediate California Peace Officer's Standards and Training certificates, (P.O.S.T.) and have received over 200 hours of additional training in criminal investigation techniques and evidence collection. During these investigations I have spoken with numerous victims, witnesses, and suspects of said crimes. From these conversations, I have learned the different methods by which suspects commit these crimes, type of tools commonly used to facilitate the crimes as well as the way suspects perpetrate the crimes.

5. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this and related investigations into California Electronic Benefit Transfer (EBT) fraud; my review of documents and records related to this and related investigations; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during this investigation. Dates, times, and amounts are approximate.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
-2-

## STATEMENT OF PROBABLE CAUSE

### Overview

6. The USSS and the SoCal CFTF are working with state and federal agencies to investigate the theft and misuse of funds electronically distributed to individuals receiving public assistance. As part of this investigation, the SoCal CFTF identified three coconspirators, Robert Stoica ("STOICA"), Chaima Chaabani ("CHAABANI"), and Mihai Viorel Stefan ("STEFAN"), who have repeatedly made unauthorized EBT withdrawals at San Diego-area ATMs and stole, or attempted to steal, from the public assistance benefit accounts of over 100 victims.

7. On September 11, 2024, U.S. Magistrate Judge Benjamin J. Cheeks signed a Complaint charging STOICA, CHAABANI, and Stefan with Access Device Conspiracy, in violation of 18 U.S.C. § 1029(a)(2) and (b)(2) (Count 1), and one count charging just STOICA with Use and Attempted Use of Unauthorized Access Devices (Count 2). The affidavit submitted in support of the Complaint described how members of the conspiracy used stolen electronic benefit transfer (EBT) account information issued to public benefit recipients to make unauthorized withdrawals from those recipients' EBT accounts.

8. On October 7, 2024, U.S. Magistrate Judge Daniel E. Butcher arraigned STOICA and CHAABANI in the Southern District of California. STOICA retained Nicolai Cocis as counsel and Judge Butcher appointed Federal Defenders of San Diego, Inc. to represent CHAABANI. STEFAN remains at large and his current whereabouts are unknown.

9. On November 19, 2024, STOICA plead guilty to both Counts 1 and 2 on November 19, 2024. As part of his plea agreement, STOICA agreed to the forfeiture of any property used in connection with or purchased with proceeds of his charged criminal conduct. **Target Device-1** is therefore subject to forfeiture and will likely be

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-3-

1  forfeited when STOICA is sentenced, which is currently set for February 18, 2025. *See*
2  24cr2194-WQH.

### Background on Electronic Benefit Transfer Cards

10. This investigation involves the theft and misuse of funds electronically distributed to individuals receiving public assistance. In California and other states, these benefits are distributed electronically via an Electronic Benefit Transfer (EBT) card that functions like a debit card. EBT cards have the beneficiaries' electronic account information encoded on the magnetic strip on the back of each card and use a personal identification number (PIN) to access funds in the account. In California, EBT benefits are typically transferred at the beginning of each month. Some EBT benefits, like CalWORKS, are available via a cash withdrawal. Other benefits, like CalFresh (the California version of the SNAP program) may only be spent at qualifying retailers on qualifying food and nutritional items. California EBT accounts are administered via a "California Advantage" card emblazoned with that name.

11. The USSS has gathered evidence indicating that members of what appear to be one or more criminal enterprises are stealing California EBT account information by installing skimmers on point-of-sale terminals, often by targeting point-of-sale terminals at large volume retailers, like Walmart, in communities with higher concentrations of public benefit recipients. The skimmed data is then often re-encoded onto the magnetic strips of cards that members of the conspiracy use to make unauthorized withdrawals and purchases. These re-encoded cards are sometimes referred to as "cloned" cards. Cloned cards can be a blank white plastic card, or another debit, credit, or gift card. Cloned cards may have names or numbers embossed on the physical face of the card. A common feature of cloned cards is that the account number encoded on the card's magnetic strip will not match the number embossed on the card's face. To facilitate the use of the stolen EBT benefits, members of the scheme will

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-4-

commonly put stickers bearing the account's PIN on the physical cards, or access devices, that are swiped at a point-of-sale terminal along with the account balance.

### STOICA & CHAABANI's Fraudulent Activities

12. STOICA is Romanian and appears to have entered the United States without inspection in or about March 2022. CHAABANI is Tunisian. She is married to a U.S. citizen and has a legal permanent resident card.

13. As part of its broader EBT fraud investigation, the SoCal CFTF collects surveillance images and transaction records for fraudulent EBT withdrawals from ATMs across San Diego County. Through the review of these and related records, the SoCal CFTF documented STOICA, CHAABANI, and STEFAN's involvement in fraudulent EBT withdrawals.

14. In December 2023, CalDSS was distributing EBT benefits at midnight. On December 1, 2023, beginning just after midnight, STOICA and CHAABANI went together to four different San Diego County bank branches to make unauthorized EBT withdrawals. That night, they attempted to withdraw $29,880 without authorization from the EBT accounts of approximately 24 victims. Of that attempted total, they successfully withdrew $12,380. Their victims were from San Diego, Kern, Los Angeles, and Tulare counties. Surveillance images showed STOICA and CHAABANI traveling together in a black Mercedes.

15. They repeated this pattern on December 2, 2023, and December 3, 2023. Over those two nights, again traveling together in the black Mercedes, STOICA and CHAABANI attempted to withdraw a total of $29,680 without authorization, of which they successfully withdrew $18,560. They stole this money from the EBT accounts of 29 victims who were from San Diego, Imperial, Fresno, and Los Angeles counties. In total, over those three nights in early December 2023, STOICA and CHAABANI attempted to steal $59,560 from 53 victims.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-5-

16. The USSS interviewed victims whose EBT accounts CHAABANI used. The victims confirmed that they had not authorized CHAABANI or STOICA to access their accounts and consistently stated that, despite being reimbursed approximately 10 days after the fraud occurred, the theft forced them to pay their rent late and made them unable to buy food in the interim.

17. In addition to making unauthorized withdrawals with CHAABANI in early December 2023, STOICA also made unauthorized EBT withdrawals with STEFAN in San Diego in early January 2024. In the pre-dawn hours of January 1, 2024, January 2, 2024, and January 3, 2024, STOICA and STEFAN attempted to withdraw $107,940 without authorization. Of this total, they successfully withdrew $57,100. They stole this money from the EBT accounts of approximately 101 victims. During this period, STOICA and STEFAN traveled together in the same car, a silver-grey SUV.

18. Investigators were able to identify STOICA based on photographs and biographical information provided by Romanian authorities. They identified CHAABANI based on comparisons to photos in her immigration file.

<u>Seizure of the TARGET DEVICES</u>

19. On September 5, 2024, police officers outside Dallas, Texas arrested STOICA for using a stolen credit card to purchase $13,000-worth of merchandize without authorization at a Fendi luxury goods store. To complete the purchase, STOICA presented a fake Utah driver's license bearing the name of the credit card's authorized user along with STOICA's photo. STOICA was arrested before he could leave the store. After arresting STOICA, officers found a Washington State driver's license with STOICA's photo and the name "Robert Stoica." Following his arrest on Texas state theft charges, STOICA was released to federal immigration authorities. **Target Device-1** was seized from STOICA at the time of his Texas state arrest. USSS later arrested STOICA when he was in immigration custody.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
-6-

20. On September 23, 2024, CHAABANI was arrested as she was returning to the U.S. at Los Angeles International Airport. She did not have a phone but did have an iPad, **Target Device-2**. CHAABANI has advised immigration authorities that she lives in Los Angeles with her husband.

21. On November 18, 2024, the USSS and SoCal CFTF obtained a warrant to search both **Target Devices** based, in part, on evidence that individuals who are traveling within California and, in STOICA's case, across the United States to engage in EBT theft and fraud commonly use mobile devices like the **Target Devices** to communicate with coconspirators, arrange for travel and lodging, store images of unauthorized access devices and skimming equipment, and research ATM locations.

## Search of the TARGET DEVICES

22. In the affidavit submitted in Case No. 24MJ4326, the government stated that STOICA and CHAABANI met at a concert in the California desert in the spring of 2023. Through the preliminary search of the **Target Devices**, the USSS and SoCal CFTF learned that STOICA and CHAABANI have known each other since the spring of **2022**, not 2023.

23. The government learned of this correction during its preliminary review of STOICA's iPhone (**Target Device-1**) and CHAABANI's iPad (**Target Device-2**). **Target Device-1** has approximately 170,000 photos/videos and **Target Device-2** has approximately 116,000 photos/videos. Dates for these images are commonly not immediately visible but instead require the examiner to open each individual image to find the date associated with the image's metadata. While looking for images of STOICA and CHAABANI together during the preliminary review of the **Target Devices'** images, the forensic examiner saw four images that appeared to be responsive to the search warrant because they showed a connection between the two coconspirators. Upon closer inspection, the examiner learned these four images were outside the authorized seizure period. During the search of **Target Device-1**, the

AFFIDAVIT IN SUPPORT OF SEARCH
WARRANT

-7-

forensic examiner found a photo of STOICA and CHAABANI together whose metadata is dated September 1, 2023. During the search of **Target Device-2**, the forensic examiner found two images of STOICA and CHAABANI together and one of just STOICA. Metadata showed that the image of just STOICA was dated October 14, 2022, and that images of the coconspirators together were dated October 15, 2022 and April 12, 2022. Based on the metadata for these four images, it appears that STOICA and CHAABANI have known each other since at least April 2022. This metadata is consistent with an audio file that STOICA sent CHAABANI on March 22, 2024, in which he referenced them having known each other for two years.

24. While the Affidavit for the original search warrant was incorrect about how long STOICA and CHAABANI have known each other, it correctly anticipated that STOICA and CHAABANI used the **Target Devices** in furtherance of the conspiracy. For example, audio files found on **Target Device-1** (whose authorized seizure period went until September 5, 2024) showed that STOICA and CHAABANI frequently exchanged audio clips in lieu of text messages. These audio clips include what appear to be references to the conspiracy. For example:

    a. On February 20, 2024, STOICA told CHAABANI, "I just pick up $100 from your cut."

    b. On March 20, 2024, STOICA told CHAABANI, "you take the cut and do whatever you want."

    c. On March 22, 2024, CHAABANI sent STOICA a series of messages. In one, CHAABANI said, "I wind up helping you every month. . . . I take risks for that shit." In another, she said "I do my transaction…" In a third, she referred to problems with their romantic relationship, but how they also make money and work together, and told him "I need you to give me my money."

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-8-

    d. On March 23, 2024, STOICA referred to what he owed CHAABANI and said that, when they first met, her helped her in part by giving her "work."[1]

  25. The search of the **Target Devices** also yielded evidence of and relating to access device and conspiracy. So far, for example, the examiner has found images of unauthorized access devices on **Target Device-1** and, on **Target Device-2**, found that a phone number associated with **Target Device-2** called the California EBT hotline in June 2024 to check the balance for EBT benefit accounts that are not in any known conspirator's name. Photos and videos on **Target Device-1** also connect STOICA and CHAABANI to other known EBT defendants. For example, in a video whose metadata is dated February 15, 2024, CHAABANI is seated at a restaurant between STOICA and Dorin Mirel Mihailescu, who is charged in 24cr2485-BAS with access device fraud and access device fraud conspiracy.

  26. Based on the evidence of access device fraud and access device fraud conspiracy found during the preliminary searches of the **Target Devices** and the evidence that CHAABANI and STOICA had known each other and worked together for approximately two years as of late March 2024, I submit there is probable cause to extend the authorized period for searching and seizing evidence of access device fraud and conspiracy from the **Target Devices**. In particular, I submit there is probable cause to search for and seize such evidence from **Target Device-1** for the period of April 1, 2022 through and including the existing end date of September 4, 2024, and to search for and seize evidence from **Target Device-2** for the period of April 1, 2022 through

---

[1] While multiple messages from late March 2024 suggest that CHAABANI and STOICA were contemplating ending their relationship, they exchanged a series of cordial messages on August 24, 2024. In these messages, STOICA referred to CHAABANI as "Baby" and asked her for information about where to pick up his tickets for Burning Man, which she then provided.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
-9-

and including August 24, 2024 (the date of STOICA and CHAABANI's last audio messages to each other).

### Procedures for Electronically-Stored Information

### Cell Phones

27. In this case, the **Target Devices** have already been imaged. According to the USSS forensic examiner, STOICA uses **Target Device-1** to communicate in both Romanian and English. **Target Device-1** has 89 GB of data and approximately 160 million forensic artifacts. **Target Device-2** has 15 GB of data and just under 8 million forensic artifacts. The forensic examiner who is handling the review of both devices will need the assistance of a Romanian linguist before she can complete her review of **Target Device-1**.

28. If there are technological challenges with the analysis of the **Target Devices**, the examiner(s) may need to consult with other law enforcement partners. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within forty-five (45) days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

30. The USSS is unaware of prior attempts to obtain this evidence.

### CONCLUSION

31. Based on the evidence described above, I submit there is probable cause to believe that evidence, fruits, and instrumentalities of violation of federal criminal law,

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

-10-

namely, 18 U.S.C. §§ 1029(a)(2), (b)(2) (access device conspiracy) and 1029(a)(2), (b)(1) (use and attempted use of unauthorized access devices), as described in Attachment B, are more likely than not to be found on previously imaged copies of the **Target Devices**, as described in Attachment A.

*Fausto W. Romero*
Fausto W. Romero
Special Deputy U.S. Marshal

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on December 17, 2024.

_____
HON. STEVE B. CHU
U.S. MAGISTRATE JUDGE

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

   a. Imaged copy of Apple iPhone (inventoried as #412 2024 IE 000245) (Imaged Target Device-1); and

   b. Imaged copy of Apple iPad, Model A1490, Serial #DMPR58F1FLMJ (Imaged Target Device-2)

(collectively, the "Imaged Target Devices").

The Imaged Target Devices, as well as the original Target Devices, are currently in the custody and control of U.S. Secret Service at 550 W. C St, Suite 660, San Diego, CA 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the Imaged Target Devices described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Imaged Target Devices for evidence described below. The seizure and search of the Imaged Target Devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Devices will be electronic records, communications, and data such as emails, text messages, mobile messaging application content, social media content, images, records from third-party and websites applications (e.g., Google Maps), photographs, audio files, videos, browsing history, and location data, for the period of **April 1, 2022**, up to and including **September 4, 2024** for **Imaged Target Device-1**, and **April 1, 2022**, up to and including **August 24, 2024** for **Imaged Target Device-2**, for the following:

   a. Communications, records, images, videos, electronic files, and attachments tending to discuss or pertain to access devices (e.g., electronic benefit transfer (EBT) cards, debit cards, the electronic track data embedded on such cards) or account information associated with such device (e.g., PINs, names), including but not limited to the unauthorized use, interception, collection, transfer, or possession of such device or related account information;

   b. Communications, records, images, videos, electronic files, and attachments tending to discuss or pertain to an agreement or conspiracy to engage in the unauthorized use or attempted use of unauthorized access devices like stolen public assistance EBT account information;

   c. Communications, records, images, videos, electronic files, and attachments tending to discuss or reflect an intent to steal or misuse access devices, or account information associated with such devices,

  that would tend to discuss or establish motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident, with regard to the crimes under investigation, or the knowledge, intent, or willingness to conspire or agree to engage in such conduct;

d.  Communications, records, images, videos, electronic files, and attachments tending to discuss, reflect, or pertain to the proceeds, fruits, or instrumentalities of or from the use of unauthorized access devices like EBT account information, credit card information, or debit card information;

e.  Communications, records, images, videos, electronic files, and attachments tending to identify the user(s) of, or persons with control over or access to, the Target Devices, including the telephone numbers associated with any of the Target Devices and, without any date restriction, all contact entries in the Target Devices;

f.  Communications, records, images, videos, electronic files, and attachments tending to identify the user(s) of the Target Devices' state of mind, knowledge, motive, and voluntariness regarding the crimes under investigation, such as any communications, records, or attachments demonstrating knowledge that EBT or debit or credit card account information, PINs, victim names, skimmers, or access devices were being used without authorization or with an intent to deceive;

g.  Communications, records, images, videos, electronic files, and attachments tending to identify or establish the use of fake or stolen personal identification information, such as the names or PINs found on California Advantage cards;

h.  Communications, records, images, videos, electronic files, and attachments tending to identify any co-conspirators, co-schemers, criminal associates, or others involved in a scheme to steal or misuse access device card information; and

      i.      Communications, records, images, videos, electronic files, and attachments that provide context to any communications, records, images, videos, electronic files, and attachments described above, such as electronic messages sent or received in temporal proximity to any relevant electronic message and any content tending to identify the user(s) of the device to be searched;

**which are evidence of violations of 18 U.S.C. § 1029(a)(2), (b)(2) (access device conspiracy), and § 1029(a)(2), (b)(1) (use and attempted use of unauthorized access devices).**